## William B. White v. Fred Clow.

### Gen. No. 4,804.

LEASE—*what implied authority conferred in connection with power to make.* Authority to rent a dwelling includes authority to make a lease with such conditions as are customary in leases and to bind the owner by such contract. So held with respect to a provision in regard to repairs.

Assumpsit. Appeal from the County Court of Lake county; the Hon. D. L. JONES, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed August 6, 1907.

F. H. TRUDE and E. J. HEYDECKER, for appellant.

ORVIS & EDWARDS and GEORGE W. FIELD, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Fred Clow, a carpenter and builder, made certain repairs on a barn and house owned by William B. White at Highland Park, Illinois. White refused to pay the bill. Eighty-eight dollars and forty cents of the bill was for window screens, door screens and work thereon, and other work of that kind. The tenant paid $75 in settlement of this bill. The rest of the bill amounted to $286.23. Clow sued White and M. R. Bortree upon said bill. Bortree died and his executor was made a party and afterwards the suit was dismissed as to him. Upon a trial Clow had a verdict and a judgment against White for $286.23. This is an appeal by White from that judgment.

The premises had been vacant about two years. White had owned them about one year and had had them repaired under the supervision of an architect. Some time in December, 1903, or January or February, 1904, the time being in dispute, White called up by telephone Jane L. Floyd, a real estate agent, who lived in Highland Park and had an office in Chicago, and told

her he was just starting for Japan, and authorized her to rent the premises for $65 per month or $60 per month if she could get a good tenant. She testified that she told him there were a number of things to be done in the way of repairs; that there were always things to be done to houses when they were rented; and that he replied, "I will leave that to you," or, as she elsewhere stated it, "I will leave it to you to do what is right." White denied that anything was said about repairs or that he gave her any authority on that subject. It is a material question of fact whether White did authorize Miss Floyd to cause repairs to be made. If her testimony is true the matter of repairs was left entirely to her judgment and discretion. The jury believed her, and the trial judge approved the verdict. They saw both witnesses and could better determine which to believe than we can. There were some things about this house that needed repairs, and the barn was in an almost useless condition, and it would not be unreasonable that an owner, just leaving for the opposite side of the globe, should repose such discretion in some one in order to secure a tenant for property that had been idle two years.

Authority to rent the property included authority to make a lease with such conditions as are customary in leases and to bind White by such a contract. Miss Floyd found a tenant who was willing to rent the property at $60 per month provided she would make certain repairs upon the house and the barn. He had horses and the barn was unfit for their use. She entered into a written lease with him in which she put the following provision: "It is further understood that the barn on place shall be sealed and put in comfortable condition for horses. That one coat of paint shall be put on second story woodwork. That man's room in basement shall be newly calcimined." The jury were warranted in finding that Miss Floyd had authority from White to make that agreement.

Most of the expenses for which recovery was had
were in the repairing and substantial rebuilding of the
barn, and the most doubtful question in the case is
whether it can be said that Miss Floyd caused that to
be done. Bortree lived in Highland Park and had a
desk in White's office in Chicago, and plaintiff's proof
was that when White was absent Bortree was often
about White's own residence at Highland Park, look-
ing after White's property and interests. White testi-
fied that Bortree had never had anything to do with
his business affairs. As Bortree was dead at the time
of the trial, his version of the matter could not be had.
Miss Floyd supposed that Bortree in some way repre-
sented White's interests. When she found that the
proposed tenant insisted as an essential condition to
his taking the property that the barn should be put
in condition for his horses, she conferred with Bortree
about it. They together decided that it should be done,
and that she should attend to the repairs to the house
and that Bortree should procure the repairs to the
barn. Bortree engaged Clow to do the work on the
barn, which constitutes the main part of the bill here
sued on. Miss Floyd did not expressly direct Bortree
to have the barn repaired. There is no proof that Bor-
tree had any authority from White to cause the barn
to be repaired. It is argued that for lack of such
authority in Bortree, White is not liable for so much
of the bill as pertains to the barn. It is no doubt true
that Miss Floyd supposed Bortree had authority in the
matter, and that to some extent she relied upon that
authority. Nevertheless, the jury were warranted in
finding that she had authority to procure such repairs
as were necessary to secure a proper tenant; that she
agreed in the lease to cause the barn to be repaired;
that she arranged with Bortree that he should look
after and procure the repairs on the barn, and that
it was so done accordingly. The quality of the work
is not disputed, and White has the barn. We conclude
the jury were warranted in finding that he is liable for

the labor and materials Clow put thereon. It may be that Miss Floyd authorized more to be done than was wise, but she could not consult her principal as he was in Japan. He left it to her discretion and is bound by her acts. No doubt if the jury and the trial judge had believed White and had found Miss Floyd was not authorized to repair, such a verdict would have been equally unassailable here. The case involves only questions of fact. The evidence was conflicting, and the conclusion of the trial judge sustaining the verdict cannot be disturbed.

The judgment is therefore affirmed.

*Affirmed.*